UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CAPPS,<br><br>    Petitioner,<br><br>    v.<br><br>JAMES HILL, Warden,<br><br>    Respondent. | No. 2:25-cv-1047 WBS AC<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding through counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action proceeds on a petition challenging petitioner's 2022 conviction for multiple sex offenses. ECF No. 1. Respondent has answered, ECF No. 11, and petitioner has filed a traverse, ECF No. 12.

## BACKGROUND

I. Proceedings in the Trial Court

A. Preliminary Proceedings

Petitioner was charged in Sacramento County with nine counts of lewd and lascivious acts against his stepdaughter, who was under 14 years old at the time. Two of the counts were allegedly committed by force. The information also charged petitioner with three counts of domestic violence against his wife: one count of corporal injury with an attached great bodily injury allegation; one count of assault with a deadly weapon, specifically a knife; and one count of assault with a shotgun.

### B. The Trial

#### 1. Mid-Trial Guilty Plea on Counts One through Nine

During a break in petitioner's stepdaughter's testimony at the beginning of his trial, petitioner pled guilty to the nine counts of lewd and lascivious acts alleged to have been committed against her. Accordingly, the facts related to those counts are not recited here.

#### 2. Prosecution Evidence[1]

As to the charges involving petitioner's wife, the jury received evidence of the following facts. In August 2018, petitioner's daughter awoke to petitioner and her mother, defendant's wife, fighting in the garage. Petitioner's wife told her daughter to leave the house. Petitioner's daughter left the house with her sister, petitioner's stepdaughter. When talking about the incident, petitioner's daughter told the 911 operator, a responding officer, and a detective that her mother told her to get out of the house because defendant had a gun. Petitioner's daughter also told a responding officer that she and her sister left the house through the side gate. While leaving the house, petitioner's daughter saw a folding knife on the ground and her father picking it up and folding it closed.

Petitioner's wife refused to testify despite the trial court finding her in contempt and imposing a $1,000 fine against her. In her absence the prosecution was permitted to introduce statements she made to police officers and medical personnel. Elk Grove Police Officer Jonathan Weir testified that he responded to a call of a suspect possessing a firearm. He encountered petitioner's wife at her and petitioner's home after petitioner had been arrested. The scene was hectic, and defendant's wife looked "frantic," "scared," "unorganized," and "disheveled." To Officer Weir, petitioner's wife looked as though she had recently been the victim of a traumatic event. She was shaking and, at times, meandering around the scene. Officer Weir interviewed petitioner's wife about an hour after the assault. Video of the interview captured on Officer Weir's body-worn camera was played for the jury. Petitioner's wife told Officer Weir that petitioner had strangled her and held a loaded gun to her head. She also told Officer Weir that

---

[1] This factual summary is adapted from the opinion of the California Court of Appeal, ECF No. 10-12 at 2-3.

petitioner held a knife to her throat and told her "I'm going to kill you, bitch." During the interview, medical personnel were present and asking petitioner's wife questions about her injuries. When searching the front yard, Officer Weir found a loaded shotgun on the back of a car parked in the driveway. Officer Weir did not find a knife.

Petitioner's wife went to the hospital. She presented with a hoarse voice caused by injury. Petitioner's wife reported to her doctor that defendant had strangled her. When making the report, petitioner's wife appeared sad and like she was reacting to the trauma she had just experienced. During police interviews a few days later, petitioner's wife continued to present with a raspy voice and appeared to have difficulty holding a conversation.

### C.  Outcome

The jury found petitioner guilty of the three charges involving his wife, and found true the allegation that he had inflicted great bodily injury during commission of the corporal injury offense. Petitioner was sentenced to an aggregate term of 39 years.

## II.  Post-Conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction. ECF No. 10-12. The California Supreme Court denied review on January 10, 2024. ECF No. 10-14. Petitioner filed no applications for collateral relief in the state courts.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits,

whether or not the state court explained its reasons. Harrington v. Richter, 562 U.S. 86, 99 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 569 U.S. 58, 64 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 563 U.S. 170, 180-181 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. at 181-182. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 182. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a

4

state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny.  Richter, 562 U.S. at 102.

## DISCUSSION

I. Claim One: Ineffective Assistance of Trial Counsel

    A. Petitioner's Allegations and Pertinent State Court Record

Petitioner alleges that his lawyer provided ineffective assistance by (1) failing to object to the social distancing of the jury; (2) failing to object to the introduction of hearsay statements; and (3) failing to ensure that petitioner's custody status was withheld from the jury.  ECF No. 1-1 at 14-25.

In support of the first asserted instance of ineffective assistance, petitioner alleges that the trial court seated some jurors outside the jury box during the trial as a COVID-19 precaution, and that defense counsel failed to object.  The following facts of record are presented in support:

> Here, social distancing requirements were in force during both jury selection and the trial. (1 RT 29; 2 RT 41.) The jury box was filled with no more than eight potential jurors during the jury selection process. (1 RT 29.) The trial court made it clear to the jury that due to COVID it was taking steps to minimize contact between jurors. (2 RT 41.) During the trial, the trial court instructed the attorney for Ms. Doe to sit in the jury box. (4 RT 196, 199.) As such, there was a space for the attorney in the jury box. (4 RT 196, 199.) Petitioner's counsel did not object to the social distancing of the jury. (Exhibit C, Petitioner's Declaration, at ¶ 2.)

ECF No. 1-1 at 14.

In support of the second asserted instance of ineffective assistance, petitioner alleges as follows:

> Here, the record establishes that on March 25, 2022, Officer Jonathan Weir presented testimony. (4 RT 232.) During questioning by the prosecution, Officer Weir testified to out-of-court statements made by paramedics while they were assessing [petitioner's wife]:
>
> > Question: Once [petitioner's wife] spoke with paramedics, what, if anything, happened thereafter?
> >
> > Answer: She declined to be transported to the hospital. Paramedics did state that they observed swelling around the neck region and that the voice – the issues with her voice

5

> were consistent with having been choked.
>
> (4 RT 245.)
>
> Additionally, Officer Weir's body-worn camera footage, which contained inadmissible hearsay statements made by non-parties who did not testify at the trial, was played for the jury and admitted into evidence without objection. (5 RT 246-248.) This footage contained the out-of-court statements made by a paramedic, Anya, who indicated [petitioner's wife] had neck trauma, specifically that her neck appeared swollen. (5 RT 246-248.)
>
> Petitioner's counsel did not object to the inadmissible hearsay presented by Officer Weir or to the admission of the body-worn camera footage which also contained inadmissible hearsay pertaining to [the victim]'s injuries and the cause of those injuries.

ECF No. 1-1 at 17-18.

As to the third asserted instance of ineffective assistance, petitioner alleges as follows:

> After jury selection concluded and prior to the commencement of the trial, the trial court and Petitioner's counsel had the following exchange regarding Petitioner's custody status:
>
> THE COURT: Let me just inquire, [counsel], on Thursday, do you want me to advise the jury not to consider the fact that Mr. Capps is in custody or leave that alone? It's up to you.
>
> PETITIONER'S COUNSEL: I prefer to leave it alone as of right now. I don't think there's any need one way or the other that I've seen. Thank you.
>
> THE COURT: All right. Just let me know if you wish to do so.
>
> (2 RT 49-50.)
>
> Petitioner's counsel made this decision on the record without any discussion with Petitioner. (2 RT 49-50.) After this brief discussion between Petitioner's counsel and the trial court, the issue was never discussed. Petitioner's counsel never requested that the trial court give any instruction to the jury regarding the Petitioner's custody status. (Exhibit C, at ¶ 5.)

ECF No. 1-1 at 20-21.

### B. The Clearly Established Federal Law

To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v.

6

Washington, 466 U.S. 668, 692, 694 (1984).  On the performance prong, reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 694-695.  Prejudice means that the error actually had an adverse effect on the defense.  There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  Id. at 693-94.  The court need not address both prongs of the Strickland test if the petitioner's showing is insufficient as to one prong.  Id. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

        C.  The State Court's Ruling

This claim was raised on direct appeal.  Because the California Supreme Court denied discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court.  See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

The state appellate court first set forth the standards applicable to a Strickland claim, ECF No. 10-12 at 7-8, and then ruled as follows:

> A
>
> *Counsel Was Not Ineffective For Failing To Object To The Seating Arrangements Of Jurors*
>
> Defendant contends his counsel had no tactical reason for failing to object to the trial court's decision to seat jurors outside the jury box. We disagree.
>
> "Defendant has failed to carry his burden because counsel was not asked why he failed to object, the record does not affirmatively disclose that counsel had no rational tactical purpose for the omission, and we are not convinced there could be no satisfactory explanation." (*People v. Arredondo*, *supra*, 8 Cal.5th at p. 711.) Counsel could have concluded, based on his experience in trial proceedings and in the community in which defendant's trial was held, that jurors would have felt more comfortable distanced from one another during the evidentiary portion of trial. Further, having seen where all the jurors were sitting during trial, defense counsel could have concluded that each juror adequately saw testifying witnesses and defendant, and that any benefit resulting from rearranging jurors did not outweigh the risk of upsetting them given the continued dangers related to the pandemic. In other words, defense counsel could have concluded, based on his experience in the community, that taking steps to make jurors feel safe and

comfortable such that they could focus on the evidence admitted at trial was actually in defendant's best interests. Because this rational tactical reason could account for counsel's failure to object, and absent any evidence as to what the jurors could or could not see, defendant's ineffective assistance claim pertaining to juror seating arrangements lacks merit.

B

*Counsel Was Not Ineffective For Failing To Object To Statements Made by Medical Personnel Captured On Officer Weir's Body-worn Camera*

Defendant contends his counsel was ineffective for failing to object on hearsay grounds to statements captured on Officer Weir's body-worn camera that were made by medical personnel. We disagree.

Defendant has failed to carry his burden of demonstrating prejudice. The only statements defendant points to as being erroneously admitted were statements regarding defendant's wife's neck injury and its appearance. Evidence that defendant strangled his wife was admitted through defendant's wife's out-of-court statements, which were offered for the truth, and were uttered during the same interaction with Officer Weir and medical personnel that was captured on Officer Weir's body-worn camera and included the hearsay statements defendant now challenges on appeal. Thus, had defense counsel objected to the admission of statements made by medical personnel, and those statements had been excluded, the jury would have still heard the substance of those statements through other means, leaving the result of defendant's trial unchanged. Accordingly, defendant's ineffective assistance of counsel claim pertaining to hearsay statements contained on footage from Officer Weir's body-worn camera is without merit.

C

*Counsel Was Not Ineffective For Failing To Request A Jury Instruction Pertaining To Defendant's Custody Status*

Defendant contends his counsel was ineffective for failing to ensure his custody status was withheld from the jury. Specifically, defendant points to his counsel's failure to request an instruction telling the jury not to consider his custody status. We disagree.

Initially, we disagree with defendant's factual contention that his counsel failed to ensure his custody status was withheld from the jury. Defendant has not cited to any portion of the record demonstrating the jury was aware of defendant's custody status. Indeed, it does not appear that defendant's custody status was referenced in front of the jury or that he was dressed in jail clothing or wore other signifiers of custodial confinement, such as restraints. Thus, while defendant argues that the right to keep the jury from knowing he was in custody is equivalent to his right to be tried in civilian clothing, defendant does not point to any indication the jury

8

> knew he was in custody.
>
> With the state of the record in mind, it is reasonable that counsel had a tactical reason not to request an instruction prohibiting the jury from considering defendant's custody status. Importantly, the instruction would have been the only indication defendant was in custody. By failing to include the instruction, counsel ensured defendant's custody status was never brought to the attention of the jury in any capacity. Accordingly, defendant's counsel was not ineffective for failing to request a jury instruction pertaining to defendant's custody status.

ECF No. 10-12 at 8-11.

### D. Objective Reasonableness Under § 2254(d)

The state court applied the standards required by Strickland, supra, ECF No. 10-12 at 7-8, and did so reasonably. Indeed, rejection of the ineffective assistance claim was compelled by Strickland and progeny both because petitioner's claims are largely conclusory and do not provide facts sufficient to rebut the presumption of reasonable performance, and for lack of a prejudice showing. See James v. Borg, 24 F.3d 20, 26 (1994) (factually unsupported claim is conclusory and does not warrant habeas relief).

On the jury seating issue, petitioner has alleged no facts which if true would demonstrate that the spacing out of jurors in the courtroom compromised the fairness of the trial in any way. The record does not even specify how many jurors were seated outside the box or where they were sitting. Accordingly, there is no factual basis for an inference that anything objectionable happened. On this record, the presumption of reasonable attorney performance that applies under Strickland has not been overcome. Strickland, 466 U.S. at 694-695; see also Matylinsky v. Budge, 577 F.3d 1083, 1092 (9th Cir. 2009) (it is petitioner's burden to rebut the presumption with evidence). And because petitioner's factual allegations fail to demonstrate any negative impact from the jury seating arrangements, petitioner cannot establish a reasonable probability that the outcome of the proceeding would have been different had counsel objected. Accordingly, rejection of this claim was not only reasonable but compelled. See Strickland, 466 U.S. at 697 (claims unsupported by prejudice showing should be rejected on that basis).

As to the hearsay subclaim, the state court's decision was reasonable because the cited hearsay statements were cumulative of properly admitted testimony. Because that evidence was

9

1  already before the jury (or was coming in), counsel's failure to object cannot have constituted
2  unreasonable performance or prejudiced petitioner.

3      Finally, as to the failure to seek a curative instruction regarding petitioner's custody status,
4  the state court was entirely correct that the claim fails for lack of facts showing that the jury was
5  aware of petitioner's custody status in the first place.  Petitioner has identified nothing in the
6  record that indicates he was denied an opportunity to come to court in street clothes, or that he
7  wore restraints which were visible to the jury, or that he otherwise appeared before the jury in a
8  way that would necessarily have drawn attention to his in-custody status and thus caused a
9  reasonable criminal defense attorney to seek a limiting instruction.  Without such facts, counsel's
10 unremarkable choice not to have the judge raise the issue is not inconsistent with reasonable
11 performance.  And for the same reasons, the facts fail to demonstrate prejudice.

12     Overall, review of a Strickland claim under the AEDPA requires a double dose of
13 deference.  Richter, 562 U.S. at 105.  The deference accorded by the state court was entirely
14 appropriate under clearly established federal law, and relief is therefore unavailable here.

15     II.    Claim Two: Distancing of Jurors as COVID-19 Precaution
16     A. Petitioner's Allegations and Pertinent State Court Record

17     Petitioner alleges that his right to a fair trial was violated by the seating of jurors at a
18 distance from one another, with some jurors outside the jury box, as a COVID-19 precaution.
19 Petitioner relies on the same references in the trial transcript that are specified above in relation to
20 the ineffective assistance of counsel claim.  See ECF No. 1-1 at 31:1-27, 32:22-26.  Petitioner
21 acknowledges that "[t]he record is unclear as to how many jurors sat in the jury box during the
22 Petitioner's trial."  Id. at 33:21-22.  He alleges in general terms that "[r]equiring some jurors to sit
23 outside of the jury box prevented all the jurors from observing the trial at all times" and that
24 "[p]etitioner and counsel could not readily observe these jurors during the course of the trial."  Id.
25 at 43:3-6.  The exhibit cited for these facts is a declaration from petitioner which states in relevant
26 part:

27     As a result of this [seating] arrangement, not all jurors were able to
    observe the trial proceedings clearly at all times. Likewise, I and
28     my attorney were unable to clearly observe or assess the demeanor

10

      and attentiveness of those jurors seated apart from the main jurybox.

ECF No. 1-2 at 17-18.[2]

### B. The Clearly Established Federal Law

The Supreme Court has never addressed a claim that seating jurors outside the jury box, or in any particular configuration, violates a criminal defendant's constitutional rights. Petitioner relies on the principle that the Confrontation Clause guarantees a defendant's right to come face to face with the jury as well as with his accusers, citing Maryland v. Craig, 497 U.S. 836, 844-846 (1990). ECF No. 1-1 at 27. He emphasizes the importance of the jury's observations of the defendant throughout trial, as recognized by Justice Kennedy's concurring opinion in Riggins v. Nevada, 504 U.S. 127, 142 (1992) (regarding consequences of involuntary medication). Id. at 27-28. And he implies that he was deprived of the impartial jury guaranteed by the Sixth Amendment, citing authorities including Gray v. Mississippi, 481 U.S. 648, 668 (1987), and Tanner v. United States, 483 U.S. 107, 126-127 (1987). Id. at 29, 32.

### C. The State Court's Ruling

The California Court of Appeals rejected this claim on procedural grounds, as follows:

> *Defendant Forfeited His Appellate Claim That The Trial Court Erred By Requiring Jurors To Sit Outside The Jury Box*
>
> Defendant points to several comments made by the trial court to demonstrate that all jurors were not seated in the jury box during the course of his trial, but were instead told to socially distance and sit beyond the confines of the jury box. Defendant contends that the trial court's decision to spread the jury beyond the jury box was error because it prevented all of the jurors from perceiving the testifying witnesses and prevented him from observing the jurors during trial. Because defendant did not object on these grounds in the trial court, he has forfeited this contention on appeal.
>
> While defendant cites to instances in the record that demonstrate some members of the jury may have sat outside of the jury box, he does not cite to any instances in the record demonstrating that jurors were prevented from seeing testifying witnesses or that he was prevented from viewing the jurors. Indeed, because defendant failed to object to the seating arrangements of the jurors in the trial court, we are left without a clue as to where jurors ultimately sat or the number of jurors who were spread beyond the jury box.

---

[2] The declaration is unsigned, id. at 18, but the court overlooks this fact for purposes of analysis.

> Importantly, we are left without a developed record to analyze whether the error defendant complains of, i.e., violation to his confrontation rights, actually occurred because jurors could not see the proceedings. (*See People v. Alvarez* (2022) 75 Cal.App.5th 28, 37 [a guarantee of the confrontation clause is that the defendant and fact finder be able "to view witness demeanor for the purpose of evaluating credibility"]; *see also Maryland v. Craig* (1990) 497 U.S. 836, 849 [face-to-face confrontation is a preference not an absolute requirement and must occasionally yield to important public policy concerns].)
>
> Thus, we agree with the People that defendant forfeited his claim under the confrontation clause by failing to object at trial to the seating arrangements of the jurors. "As a general rule, a defendant's failure to object to an alleged trial error relieves an appellate court of the obligation to consider the claim on review. [Citation.] The reason for this rule is to allow the trial court to correct its errors and 'to prevent gamesmanship by the defense.' [Citation.] [Our Supreme Court has] applied this rule numerous times to find forfeiture of a constitutional right of confrontation claim." (*People v. Arredondo* (2019) 8 Cal.5th 694, 710.) Had defendant objected to the seating of jurors outside the jury box, the trial court would have had an opportunity to correct any error by rearranging the jurors, or to make additional findings on the record regarding the position of the jurors and their ability to perceive the testifying witnesses or defendant's ability to perceive the jurors. Because defendant did not object, he has forfeited his claim.
>
> We further find defendant's efforts to excuse his forfeiture as lacking in merit. Defendant first claims any objection to the seating arrangements of the jurors was futile. We disagree. There is nothing in the record demonstrating the trial court would have refused to entertain a request to better position jurors or move them all to the jury box had defendant expressed concerns that jurors were unable to properly perceive the evidence, or he was unable to properly perceive the jurors. Further, while defendant claims he is raising "a very serious issue involving both the federal and state [C]onstitutions," his claims are highly fact dependent, and the record does not contain the facts necessary for us to determine whether error occurred. Thus, we decline to exercise our discretion to review defendant's claim that the trial court erred by requiring jurors to sit outside the jury box.

ECF No. 10-12 at 6-7.

### D. Procedural Default

As a general rule, a federal habeas court will not review a question of federal law presented to a state court if that court rejected the claim on state law grounds that are independent of the federal question and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729 (1991). A petitioner can overcome a procedural default by demonstrating cause and

12

prejudice. Id. at 753. Ineffective assistance of counsel in causing the default may constitute cause, when such ineffectiveness is independently pleaded and exhausted. Murray v. Carrier, 477 U.S. 478, 488 (1986); Edwards v. Carpenter, 529 U.S. 446, (2000).

The Ninth Circuit has squarely held that a California appellate court's forfeiture finding based on the failure of trial counsel to preserve an issue supports procedural default under Coleman and progeny. Fairbank v. Ayers, 650 F.3d 1243, 1256-1257 (9th Cir. 2011). Accordingly, the forfeiture finding by the California Court of Appeal in this case means that the claim is procedurally barred in federal court. Although petitioner asserts ineffective assistance of counsel in an attempt to excuse any default, ECF No. 12 at 6, this theory fails for the same reasons that the freestanding ineffective assistance of counsel claim fails: the presumption of reasonable attorney performance has not been rebutted, and petitioner has not demonstrated prejudice.

Should the assigned district judge disagree as to default, the undersigned recommends bypassing the procedural bar and denying the claim on the merits for the reasons that follow. See Lambrix v. Singletary, 520 U.S. 518, 522-25 (1997) (federal court may bypass issue of procedural bar in interests of judicial economy where claim fails on the merits); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (same).

### E. The Claim Fails on the Merits

None of the general constitutional principles on which petitioner relies for this claim have ever been applied by the U.S. Supreme Court to a fact pattern analogous to that presented here. This dooms the claim under either AEDPA or pre-AEDPA standards. See Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam) (if no Supreme Court precedent controls a legal issue raised by a habeas petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law within the meaning of AEDPA and relief is therefore unavailable); Teague v. Lane, 489 U.S. 288 (1989) (pre-AEDPA principle of non-retroactivity bars federal habeas relief on any theory not already established by precedent).

Moreover, and even more fundamentally, petitioner has not proffered facts which show that any jurors were actually unable to observe petitioner's courtroom demeanor or actually

13

unable to see or otherwise perceive the testifying witnesses. The entire factual predicate for this claim is therefore speculative and relief is unavailable for that reason. See James, 24 F.3d at 26 (conclusory allegations which are not supported by a statement of specific facts do not support habeas relief); Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) (speculation about unpresented evidence is not enough to support claim).

### III.     Claim Three: Insufficient Evidence of Assault with a Deadly Weapon

#### A.    Petitioner's Allegations and Pertinent State Court Record

Petitioner contends that his conviction for assault with a knife was unsupported by evidence sufficient to prove that he used a knife. He alleges that the only evidence supporting the allegation that he held a knife to his wife's throat was her statement to Officer Weir. No knife was found, there was no corroborating evidence of injury from a knife, and no witness saw him hold a knife to his wife's throat. ECF No. 1-1 at 40-41. Petitioner alleges that this state of the evidence is constitutionally insufficient to support the conviction.

#### B.    The Clearly Established Federal Law

Due process requires that each essential element of a criminal offense be proven beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364 (1970). In reviewing the sufficiency of evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). If the evidence supports conflicting inferences, the reviewing court must presume "that the trier of fact resolved any such conflicts in favor of the prosecution," and the court must "defer to that resolution." Id. at 326. "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam).

#### C.    The State Court's Ruling

The state appellate court ruled as follows:

> *Sufficient Evidence Supports Defendant's Conviction For Assault With A Knife*

14

Defendant contends insufficient evidence supports his conviction for assault with a deadly weapon, i.e., a knife, because the only evidence admitted supporting the allegation that defendant held a knife to his wife's throat was her contemporaneous statements to Officer Weir that were not corroborated by evidence of an injury or testimony by another witness who saw the assault. We disagree.

"To assess the evidence's sufficiency, we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. (*People v. Maury* (2003) 30 Cal.4th 342, 403 . . . .) The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Id*. at p. 396.) In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. ([*People v.*] *Boyer* [(2006)] 38 Cal.4th [412,] 480.) 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' (*Maury*, *supra*, at p. 403.) A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357, some italics omitted.)

To prove a charge of assault with a deadly weapon, the prosecution was required to show, "One: The [d]efendant did an act with a deadly weapon other than a firearm, that, by its nature, would directly and probably result in the application of force to a person. [¶] Two: The [d]efendant did that act willfully. [¶] Three: When the [d]efendant acted, he was aware of facts that would lead a reasonable person to realize that his act, by its nature, would directly and probably result in the application of force to someone. [¶] And four: When the [d]efendant acted, he had the present ability to apply force with a deadly weapon other than a firearm. [¶] . . . [¶] No one needs to actually have been injured by [d]efendant's act, but if someone was injured, you may consider that fact, along with all the other evidence, in deciding whether the [d]efendant committed an assault." (CALCRIM No. 875.)

Defendant's wife's statements to Officer Weir were admitted for their truth. In those statements, defendant's wife said defendant held a knife to her throat. This testimony alone is sufficient to prove the fact that defendant held a knife to his wife's throat. (See *People v. Barnwell* (2007) 41 Cal.4th 1038, 1052 ["Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the finding"].) Defendant does not cite to any authority requiring defendant's wife's statements to be corroborated in order to support

15

> a guilty verdict. Indeed, defendant's wife was not an accomplice in the assault. (*See* Pen. Code, § 1111 ["A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense"].) The jury obviously found defendant's wife's out-of-court statements credible. We must accept that finding, unless inherently improbable or implausible. (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1204.) Defendant has not made that showing here where defendant's daughter saw defendant in possession of a folding knife, at least corroborating defendant's wife's testimony that a knife was present, and no evidence was admitted demonstrating defendant's wife's out-of-court statements were inherently implausible. Taken together, the evidence was sufficient to support the jury's guilty finding on the assault with a deadly weapon conviction.

ECF No. 10-12 at 4-6.

### D. Objective Unreasonableness Under § 2254(d)

Under Jackson v. Virginia, supra, the state appellate court was obliged to view the evidence in the light most favorable to the judgment and to consider all reasonable inferences in support of that judgment. It did so. The U.S. Supreme Court has never held that victim testimony must be corroborated in order to support a conviction, and the statements of petitioner's wife to Officer Weir were admitted for their truth and accordingly must be treated as testimony. The jurors saw the body-camera footage of the wife's statements, and were able to assess their credibility. Such credibility determinations are entitled to near-total deference. Jackson, 443 U.S. at 326. For these reasons, the state court's resolution of the issue was not merely reasonable but was compelled by clearly established federal law. Particularly in light of the "double dose of deference" to the verdict that is required under Jackson and the AEDPA, Boyer v. Belleque, 659 F.3d 957, 964 (9th Cir. 2011), federal habeas relief is unavailable.

### CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). [Even without reference to AEDPA standards, petitioner has not established any violation of his constitutional rights.] Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

|   |   |
|---|---|
| 1 | These findings and recommendations are submitted to the United States District Judge |
| 2 | assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days |
| 3 | after being served with these findings and recommendations, any party may file written |
| 4 | objections with the court and serve a copy on all parties. Such a document should be captioned |
| 5 | "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, |
| 6 | he shall also address whether a certificate of appealability should issue and, if so, why and as to |
| 7 | which issues. See 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed |
| 8 | within fourteen days after service of the objections. The parties are advised that failure to file |
| 9 | objections within the specified time may waive the right to appeal the District Court's order. |
| 10 | Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). |
| 11 | DATED: December 1, 2025 |

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE